IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KEVIN LENAHAN and<br>PETER AUBRY,<br><br>     **Plaintiffs,**<br>  **v.**<br><br>SANTA ROSA RANCHERIA TACHI<br>TRIBE aka SANTA ROSA BAND OF<br>TACHI INDIANS dba PALACE<br>INDIAN GAMING CENTER; and<br>PALACE INDIAN GAMING CENTER,<br>a California Corporation.<br><br>     **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CV F 05-608 AWI LJO<br><br>**ORDER DISMISSING CASE<br>FOR LACK OF SUBJECT<br>MATTER JURISDICTION** |

   This case arises from a traffic accident in Lemoore, California.  Kevin Lenahan and Peter Aubry ("Plaintiffs") filed suit against the Santa Rosa Rancheria Tachi Tribe a.k.a. Santa Rosa Band of Tachi Indians d.b.a. Palace Indian Gaming Center (the "Tribe") and the Palace Indian Gaming Center, a California Corporation ("Palace").  The Tribe states in its motion that the Palace is exclusively identified with and controlled by the Tribe to realize the Tribe's goal of self-sufficiency and determination and thus, is also entitled to immunity.  The Tribe moves for dismissal under Rules 12(b)(1) and 12(b)(2) on the grounds that the federal statutes relied upon for jurisdiction are inapplicable and that the Tribe enjoys tribal sovereign immunity.

1    After the Court took this matter under submission, but prior to issuance of this order, the

2    Tribe filed a stipulation for dismissal with prejudice that was signed by all parties who have

3    made an appearance.  No answer or summary judgment motion was filed, so the stipulation is a

4    dismissal under Rule 41(a)(1) and dismissal with prejudice as to the Tribe was effective upon

5    filing without the need for a court order.  Wilson v. City of San Jose, 111 F.3d 688, 692 (9th Cir.

6    1997).  That leaves the Palace as the only named defendant in this action.  However, the Tribe's

7    Rule 12(b)(1) motion is well taken.  Federal courts have an obligation to satisfy themselves that

8    they have jurisdiction over a case.  See Herman Family Revocable Trust v. Teddy Bear, 254 F.3d

9    802, 804 (9th Cir. 2001); Mallard Auto Group, Ltd. v. United States, 343 F.Supp.2d 949, 952-53

10   (D. Nev. 2004); see also Fed. R. Civ. P. 12(h).  Since the issue of this Court's subject matter

11   jurisdiction has been raised, this Court will address the substance of the Tribe's Rule 12(b)(1)

12   motion and dismiss this case under Rule 12(h)(3).

13

14                              **FACTUAL BACKGROUND**

15   From the Complaint, Plaintiffs allege that on May 5, 2003, Defendants's agent/employee,

16   Louis Arturo Hernandez, was operating a shuttle van/bus that was owned by Defendants and in

17   which Plaintiffs were passengers.  Plaintiffs allege that the conduct by Defendants and/or their

18   agents in the operation of the shuttle van led to an automobile collision.  The accident occurred

19   on 18th Avenue, approximately 1649 feet south of Idaho Avenue in Lemoore, California.  As a

20   result of the automobile collision, Plaintiffs allege that they have sustained a variety of damages,

21   including lost wages, pain and suffering, and bodily injury that will persist into the future.

22   Plaintiffs allege negligence and seek compensatory and punitive damages.

23   The complaint alleges that, "Jurisdiction in this Court is proper in that the causes of

24   action alleged herein arise under and are substantially related to the Indian Gaming and Reform

25   Act of 1988, 25 U.S.C. § 477, 18 U.S.C. § 1166, and 25 U.S.C. § 2701."  Plaintiffs's Complaint

26   at ¶ 1.  Similarly, the Complaint states that the Tribe "was at all times mentioned herein doing

27

28   daw                                        2

1  business as Palace Indian Gaming Center, a California corporation pursuant to the Indian Gaming

2  Reform Act of 1988, 25 U.S.C. § 477, 18 U.S.C. § 1166, and 25 U.S.C. § 2701." Id. at ¶ 4.  No

3  other basis for jurisdiction is identified in the complaint.

4         Additionally, it is alleged that the Palace is a duly organized business entity existing

5  under the laws of the State of California, and that Defendants operated a Class III gaming facility

6  located in Lemoore, California.  Plaintiffs's Complaint at ¶¶ 5, 6.  Plaintiffs's Complaint refers

7  to the Tribe and Palace as "the defendants" and the complaint states that the causes of action are

8  against the Tribe and the Palace "and each of them."[1]  Id. at p. 1.

9         Prior to its dismissal, the Tribe moved to dismiss the complaint on the bases that the

10  federal statutes relied upon by Plaintiffs are inapplicable and that the Tribe enjoyed tribal

11  sovereign immunity.[2]  Plaintiffs have filed no opposition or response.

12

13                              **LEGAL STANDARD**

14         Rule 12(h)(3) provides, "Whenever it appears by suggestion of the parties or otherwise

15  that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R.

16  Civ. P. 12(h)(3).

17         Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for a motion to dismiss

18  based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental

19  precept that federal courts are courts of limited jurisdiction.  Limits upon federal jurisdiction

20  must not be disregarded or evaded.  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365,

21

22

23         [1]The status of the Palace is unclear from the pleadings in this case.  Plaintiffs's complaint alleges that the Tribe was "doing business as" the Palace, but also brings suit against the Palace as a separate entity, specifically as a California Corporation.  It is possible for a tribal subentity to incorporate under state law.  See American Vantage

24  Cos. v. Table Mt. Rancheria, 292 F.3d 1091, 1095 n.1 (9th Cir. 2002).  However, since "doing business as" does not create a separate entity, see Duval v. Midwest Auto City, Inc., 425 F.Supp. 1381, 1387 (D. Neb. 1977), affd., 578

25  F.2d 721 (8th Cir. 1978); Pinkerton's, Inc. v. Superior Court, 49 Cal.App.4th 1342, 1348-49 (1996), Plaintiffs's complaint appears inconsistent by alleging the Tribe was "doing business as" the Palace and by attempting to sue the

26  Palace as a separate entity.  The Court will take Plaintiffs's complaint as an attempt to sue two separate entities.

27         [2]Because the Tribe was voluntarily dismissed with prejudice, it is unnecessary to discuss tribal immunity.

28  daw                                      3

374 (1978).  A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  The plaintiff has the burden to establish that subject matter jurisdiction is proper.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); In re Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001).  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1).  The pleading must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment."  Tosco Corp. v. Communities For A Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself.  See Wolf, 392 F.3d at 362; Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2000); Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977).  When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Savage, 343 F.3d at 1039 n.2.  The court need not presume the truthfulness of the plaintiff's allegations under a factual attack.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

## DISCUSSION

The identified basis for this Court's jurisdiction is federal question jurisdiction from the

daw                                                                  4

1  following statutes: the Indian Gaming and Reform Act ("IGRA")/25 U.S.C. § 2701, 25 U.S.C. §

2  477, and 18 U.S.C. § 1166.  However, none of these statutes are sufficient to confer federal

3  question jurisdiction in this case.

4       **1.    The Indian Gaming and Reform Act**[3]

5       The IGRA "prescribes the conditions under which Indian tribes may engage in

6  commercial gaming on their reservations," and its general purpose is to promote economic

7  development and self-sufficiency among Indian tribes.[4]  25 U.S.C. § 2702; City of Roseville v.

8  Norton, 348 F.3d 1020, 1021, 1030 (D.C. Cir. 2003); see American Greyhound Racing, Inc. v.

9  Hull, 305 F.3d 1015, 1018 (9th Cir. 2002).  The IGRA waives tribal sovereign immunity in the

10  "narrow category" of cases where compliance with the IGRA is at issue.  Lewis v. Norton, 424

11  F.3d 959, 962 (9th Cir. 2005); Mescalero Apache Tribe v. New Mexico, 131 F.3d 1379, 1385

12  (10th Cir. 1997).  However, "nowhere does IGRA expressly authorize private individuals to sue

13  directly under the statute for failure of a tribe . . . to comply with its provisions."  Hartman v.

14  Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1232 (10th Cir. 2003); see Hein v. Capitan

15  Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1260-1261 (9th Cir. 2000).

16       Here, Plaintiffs are alleging common law claims of negligence in the context of an

17

18

19      [3]The IGRA is found at 25 U.S.C. §§ 2701-2721 and contains criminal provisions found at 18 U.S.C. §§
    1166-1168.  United Keetoowah Band of Cherokee Indians v. Oklahoma, 927 F.2d 1170, 1176 (10th Cir. 1991).

20      [4]The only express provision of the IGRA that is identified in the complaint is 25 U.S.C. § 2701.  This
    section is the findings of Congress.  That section reads:

21      The Congress finds that--

22      (1) numerous Indian tribes have become engaged in or have licensed gaming activities on Indian lands as a
    means of generating tribal governmental revenue;

23      (2) Federal courts have held that section 2103 of the Revised Statutes (25 U.S.C. 81) requires Secretarial
    review of management contracts dealing with Indian gaming, but does not provide standards for approval of
    such contracts;

24      (3) existing Federal law does not provide clear standards or regulations for the conduct of gaming on Indian
    lands;

25      (4) a principal goal of Federal Indian policy is to promote tribal economic development, tribal self-
    sufficiency, and strong tribal government; and

26      (5) Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is
    not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of
    criminal law and public policy, prohibit such gaming activity.

27

28  daw                         5

1    automobile collision.  The Court fails to see how this activity is regulated or covered by the

2    provisions of the IGRA.  Further, no private cause of action for individuals exists under the

3    IGRA.  Hartman, 319 F.3d at 1232; Hein, 201 F.3d at 1260-61.  The IGRA is not a basis for

4    federal question jurisdiction in this case.

5

6    **2.    18 U.S.C. § 1166 – Gambling In Indian Country**

7         18 U.S.C. § 1166 is a penal provision of the IGRA.  See United States v. Spokane Tribe

8    of Indians, 139 F.3d 1297, 1299 (9th Cir. 1998); Wyandotte Nation v. Sebelius, 337 F.Supp.2d

9    1253, 1256 (D. Kan. 2004); see also United States v. E.C. Invest., 77 F.3d 327, 330 (9th Cir.

10   1996).  This section reads in pertinent part:

11        (a) Subject to subsection (c),[5] for purposes of Federal law, all State laws
          pertaining to the licensing, regulation, or prohibition of gambling, including but
12        not limited to criminal sanctions applicable thereto, shall apply in Indian country
          in the same manner and to the same extent as such laws apply elsewhere in the State.
13
          (b) Whoever in Indian country is guilty of any act or omission involving
14        gambling, whether or not conducted or sanctioned by an Indian tribe, which,
          although not made punishable by any enactment of Congress, would be
15        punishable if committed or omitted within the jurisdiction of the State in which
          the act or omission occurred, under the laws governing the licensing, regulation,
16        or prohibition of gambling in force at the time of such act or omission, shall be
          guilty of a like offense and subject to a like punishment.
17        . . . . . . . . . . . . . . . . . . . . .

18        (d) The United States shall have exclusive jurisdiction over criminal prosecutions
          of violations of State gambling laws that are made applicable under this section to
19        Indian country, unless an Indian tribe pursuant to a Tribal-State compact approved
          by the Secretary of the Interior under section 11(d)(8) of the Indian Gaming
20        Regulatory Act [25 USCS § 2710(d)(8)], or under any other provision of Federal
          law, has consented to the transfer to the State of criminal jurisdiction with respect
21        to gambling on the lands of the Indian tribe.

22   18 U.S.C. § 1166.

23

24   _____

        [5]18 U.S.C. § 1166(c) reads:
25   (c) For the purpose of this section, the term "gambling" does not include--
     (1) class I gaming or class II gaming regulated by the Indian Gaming Regulatory Act, or
26   (2) class III gaming conducted under a Tribal-State compact approved by the Secretary of the Interior under section
     11(d)(8) of the Indian Gaming Regulatory Act [25 USCS § 2710(d)(8)] that is in effect.

27

28   daw                                    6

"18 U.S.C. § 1166 establishes federal jurisdiction over violations of state gaming laws on Indian lands." Artichoke Joe's Cal. Grand Casino v. Norton, 353 F.3d 712, 725 (9th Cir. 2003). The power to enforce/prosecute these incorporated state laws rests solely with the United States unless the tribe in question has consented to State criminal jurisdiction. See 18 U.S.C. § 1166(d); AT&T Corp. v. Coeur D'Alene Tribe, 295 F.3d 899, 909 (9th Cir. 2002); Wyandotte Nation, 337 F.Supp.2d at 1256.

Here, the allegations involve simple negligence with respect to an automobile collision. There are no allegations or suggestions that Defendants have violated state gaming laws, 18 U.S.C. § 1166 does not deal with negligence and automobile collisions, it is unknown how 18 U.S.C. § 1166 would allow two private citizens to maintain a suit where § 1166 has been violated, and the Court does not see how 18 U.S.C. § 1166 operates to give this Court jurisdiction over this case.  18 U.S.C. § 1166 is not a basis for federal question jurisdiction in this case.

**3.     25 U.S.C. § 477 – The Indian Reorganization Act of 1934**

25 U.S.C. § 477 reads:

The Secretary of the Interior may, upon petition by any tribe, issue a charter of incorporation to such tribe: Provided, That such charter shall not become operative until ratified by the governing body of such tribe. Such charter may convey to the incorporated tribe the power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose of property of every description, real and personal, including the power to purchase restricted Indian lands and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of corporate business, not inconsistent with law, but no authority shall be granted to sell, mortgage, or lease for a period exceeding twenty-five years any trust or restricted lands included in the limits of the reservation. Any charter so issued shall not be revoked or surrendered except by Act of Congress.

25 U.S.C. § 477.

"The Indian Reorganization Act, 25 U.S.C. § 476, authorizes Indian tribes to organize as a constitutional entity, and § 477 of the Act authorizes organization of a corporate entity." Linneen, 276 F.3d at 492-93; see also Table Mt. Rancheria, 292 F.3d at 1095 n1.  While "25 U.S.C. §§ 476, 477 provide the authority and procedures whereby Indian tribes may adopt

1  constitutions and bylaws and ratify corporate charters . . . that fact alone is insufficient to confer

2  federal question jurisdiction." Boe v. Ft. Belknap Indian Community of Ft. Belknap Reservation,

3  642 F.2d 276, 279 (9th Cir. 1981); see also Boe v. Ft. Belknap Indian Community of Ft. Belknap

4  Reservation, 455 F.Supp. 462, 464 n.5 (D. Mont. 1978); Farrington v. Confederated Salish, 448

5  F.Supp. 214, 214-215 (D. Mont. 1978); Pambrun v. Blackfeet Tribe, Blackfeet Reservation, 400

6  F.Supp. 1394, 1395 (D. Mont. 1975).

7         Cases that discuss § 477 often do so with respect to a waiver of immunity found within

8  corporate charters, specifically "sue and be sued" clauses. E.g., Linneen v. Gila River Indian

9  Cmty., 276 F.3d 489, 492-93 (9th Cir. 2002). However, the applicability of tribal sovereign

10  immunity is a separate question from the existence of a federal question. See Oklahoma Tax

11  Comm'n v. Graham, 489 U.S. 838, 840-42 (1989); Pambrun, 400 F.Supp. at 1395. In *Boe* (both

12  appellate and district levels), *Pambrun*, and *Farrington*, the courts concluded that § 477 did not

13  provide a basis for jurisdiction when the plaintiffs in those cases sought an accounting of funds,

14  Pambrun, 400 F.Supp. at 1395, sought damages from a traffic accident, Farrington, 448 F.Supp.

15  at 214-15, or sought damages and injunctive relief for violations of tribal ordinances. Boe, 642

16  F.2d at 276, 279-80; Boe, 455 F.Supp. at 463, 464 n.5.

17         Here, Plaintiffs have simply cited 25 U.S.C. § 477 without further elaboration. There is

18  no suggestion how 25 U.S.C. § 477 itself provides the basis for federal question jurisdiction on a

19  negligence claim arising out of an automobile collision. That the Tribe, who is no longer a party,

20  may have incorporated does not create federal question jurisdiction over this negligence case.

21  See Boe, 642 F.2d at 279-80; Boe, 455 F.Supp. at 464 n.5; Farrington, 448 F.Supp. at 214-215;

22  Pambrun, 400 F.Supp. at 1395. 25 U.S.C. § 477 is not a basis for federal question jurisdiction in

23  this case.

24                                    **CONCLUSION**

25         Each of the statutes identified by Plaintiffs in their complaint as creating federal question

26  jurisdiction, in actuality, do not create federal question jurisdiction in this case. The statutes

27

28  daw                                        8

1  identified are more in the nature of attempting to show Congressional abrogation of the Tribe's

2  sovereign immunity.  However, "Tribal immunity may provide a federal defense . . . But it has

3  long been settled that the existence of federal immunity to the claims asserted does not convert a

4  suit otherwise arising under state law into one which, in the statutory sense, arises under federal

5  law." Graham, 489 U.S. at 841; see also Pambrun, 400 F.Supp. at 1395.  The allegations in the

6  complaint are insufficient to show how a cause of action for negligence in connection with an

7  automobile collision in Lemoore, California creates a federal question in this case.

8         Here, the only identified basis for this Court's jurisdiction over this matter is the presence

9  of federal questions.  As discussed above, the identified federal statutes do not create federal

10  question jurisdiction in this case.  Furthermore, Plaintiffs have filed no response or opposition of

11  any kind even though the Rule 12(b)(1) motion requests dismissal without leave to amend.

12  There is no response to any of the arguments made, no request for leave to amend, and no

13  suggestion or further identification of another federal question that may be applicable.  The Court

14  is not aware of a federal statute that would give it federal question jurisdiction over this

15  negligence case.  Given the above considerations, the Court will dismiss this case without leave

16  to amend.

17

18         Accordingly, IT IS HEREBY ORDERED that:

19         1.      This case is DISMISSED under Rule 12(h)(3) without leave to amend; and

20         2.      The clerk is directed to close this case.

21

22  IT IS SO ORDERED.

23  **Dated:    April 10, 2006   **              _____/s/ Anthony W. Ishii_____
    0m8i78                              UNITED STATES DISTRICT JUDGE

24

25

26

27

28  daw                                    9